# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

STEPHEN D. HAYNES,

       Plaintiff,

vs.                                               Civil No. 04-0481 RLP

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**I.**      **Background**

This matter comes before the court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision. (Docket No. 9).

Plaintiff filed applications for Supplemental Security Income and Disability Income benefits in March 2002. His applications were denied at the first and second levels of administrative review. An Administrative Law Judge ("ALJ" herein) conducted a hearing on June 16, 2003, and denied Plaintiff's claims in a written decision dated December 10, 2003. On March 4, 2004, the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff had a lumbar laminectomy in 1990 (Tr. 57, 110), received steroid injections for a torn rotator cuff of the left shoulder between 1992 and 1994 (Tr. 57), had arthroscopic surgery on both knees in the early 1990s (Tr. 58, 110,172-175), was treated conservatively for probable left biceps tendonitis in 1998 (Tr. 141-142), and sustained an injury prior to 1998 which limited his ability to

fully extend his right elbow.[1]  (Tr. 142).  There is no record of medical care between September 1998 and April 2002.

On April 30, 2002, x-rays of Plaintiff's lumbar spine and knees were ordered to assess complaints of low back pain.  The lumbar spine showed facet arthropathy and marked narrowing of the L4-5 disc space with vacuum phenomenon [2] and spur formation, in keeping with degenerative disc changes.  Both knees showed mild degenerative changes with some narrowing of the joint space. (Tr. 108-109).

Plaintiff was evaluated by Karen Balkman, M.D., on May 2, 2002, at the request of the Disability Determination Unit.  (Tr. 110-117).  Plaintiff complained of pain in his back radiating down his left thigh to his ankles, knee pain with difficulty weight bearing and hand pain, all of which had worsened over time.  He was taking no pain medication at the time.   Dr. Balkman's report will be discussed in more detail, *infra*. Dr. Balkman concluded that Plaintiff had degenerative disc disease as noted on x-rays, with no associated neurological deficits, no limitation in range of motion or performance of daily activities; mild degenerative joint disease of the knees with no limitation in range of motion, and arthritis of his hands which was normal for his age, and which did not interfere with function.  She submitted  Medical Source Statement of Work Related Abilities, stating that Plaintiff could lift and carry up to 50 lbs. occasionally, 25 lbs. frequently, and had no limitations in ability to sit, reach overhead, handle objects,  travel, use his hand/fingers for fine manipulation. (Tr. 116-117).

---

[1]The medical record noting this deficiency does not record the extent of this limitation.  However, a range of motion chart prepared in 2002 indicates that Plaintiff's right elbow lacked 70 degrees of flexion-extension.  (Tr. 114).

[2]The presence of a linear radiolucency in the disc space, a typical finding of degenerative disk disease. www.gentili.net/signs/26.htm

Plaintiff was seen on four occasions between September 20, 2002 and November 14, 2002 by Bartley Rust, a physician's assistant with Presbyterian Medical Services.  (Tr. 128-131).  None Mr. Rust's treatment notes records a physical examination.  Mr. Rust ordered x-rays and prescribed medication based apparently on Plaintiff's complaints of low back and knee pain and insomnia.  X-ray of Plaintiff's right knee taken October 7, 2002 showed mild degenerative change (Tr. 150). X-ray of Plaintiff's left knee taken October 31, 2002 showed no abnormalities.  (Tr. 152).  X-ray of Plaintiff's lumber spine taken October 31, 2002 showed narrowing of the L5-S1 disc space with vacuum phenomenon and spur formation anteriorly and posteriorly, in keeping with degenerative disc changes.  (Tr. 152).  Plaintiff was provided with a prescription for Naprosyn[3] on October 7 and Trazodone[4] on October 30.[5] (Tr. 129-130).

Plaintiff was admitted to the Emergency Room on February 10, 2003, complaining of a headache.  (Tr. 159). The administrative record contains no narrative note regarding his treatment in the ER.  His spinal fluid was cultured for suspected meningitis.  All results were negative.  (Tr. 161-170).

On May 28, 2003,  Plaintiff was evaluated by William Baggs, M.D.,[6] for problems with his right elbow.  (Tr. 145).  Dr. Baggs did not record a physical examination in his treatment note, but

---

[3]Naprosyn is a  nonsteroidal anti-inflammatory medication used in the treatment of arthritis. www.rocheusa.com/products/naprosyn/.

[4]Trazodone is an antidepressant.  www.medicinenet.com/trazodone/article.htm.

[5]In  a Statement of Claimant's Medications, Plaintiff stated that Mr. Rust had prescribed Keterolac (Trazodone) on September 20, 2002.  (Tr. 107).  There is no mention of this prescription in the September 20, 2002 treatment note.  Keterolac is a nonsteroidal anti-inflammatory medication  indicated for the short-term (approximately 5 days) management of moderately severe, acute pain that requires analgesia at the opioid level, usually in a postoperative setting.  www.rxlist.com/cgi/generic/ketor_ids.htm

[6]Dr. Baggs had operated on Plaintiff's right knee in 1994.  (Tr. 172-177).

the following day prepared a letter stating that:

> [Mr. Haynes] has significant arthritis in bilateral knees. . . he showed significant arthritic degeneration of the (right) elbow.  His physical examination showed both elbows lack full extension, lack full flexion; he has marked spurring, degeneration and tenderness.
>
> It is my belief that this patient, with a combination of upper and lower extremity arthritis, is disabled.

(Tr. 144).

## II.     The Decision of the ALJ

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged date of onset of disability (step one);  that his impairment of prior lumbar laminectomy, degenerative disc disease, degenerative joint disease of the knees and arthritis of the hands and elbows  was severe (step two); that he did not have a listed impairment (step three); that he was not entirely credible; that he had residual functional capacity for the full range of light work; that he could not return to his past relevant work (step four); that he had no non-exertional limitations, and that application of the medical vocational guidelines directed a finding of not disabled. (step five).

## III.    Issues Raised on Appeal

The Plaintiff raises several issues on appeal, including:

A.     Whether the ALJ failed to apply correct legal principles when he discounted the opinions of Plaintiff's treating physician.

B.     Whether the ALJ's assessment of Plaintiff's residual functional capacity is supported by substantial evidence.

C.     Whether the ALJ's credibility determination is supported by substantial evidence.

## IV.     Scope of Review

I review the ALJ's decision only to determine whether her factual findings are supported by

4

substantial evidence and whether she applied the correct legal standards. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). In making the substantial evidence determination, I neither reweigh the evidence nor substitute my judgment for that of the ALJ. *See Thompson*, 987 F.2d at 1487. If the Commissioner's factual findings are supported by substantial evidence, they must be given conclusive effect. 42 U.S.C. §405(g). Substantial evidence is that which a reasonable person might find sufficient to support a particular conclusion. *Richardson v. Perales*, 402 U.S. 389, 401-402 (1971). Further, evidence must be more than a scintilla, *Id.*, at 403, but may be less than a preponderance. *Flint v. Sullivan*, 951 F.2d 264, 266 (10th Cir. 1991).

**V.     Discussion.**

  **A.     The ALJ Erred in Evaluating Plaintiff's Residual Functional Capacity.**

The ALJ is charged with determining a claimant's RFC from the medical record. See, e.g., §20 C.F.R. 404.1527(e)(2); §20 C.F.R. 416.927(e)(2); SSR 96-5p, 1996 WL 374183, at 5. The ALJ's determination must be based on substantial evidence, which is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) (citations omitted).

In determining Plaintiff's RFC, the ALJ relied primarily on Dr. Balkman's evaluation, but also cited Dr. Baggs' May 2003 letter. (Tr. 18-20). The physical findings noted by Dr. Baggs are brief and relatively non-specific. Except for evaluation of range of motion, his recorded findings are no different from the observations of Dr. Balkman and of radiologists evaluating Plaintiff's back and

knee x-rays.[7]

Dr. Balkman's examination and findings are much more detailed and specific than those of Dr. Baggs.  Several are also internally inconsistent:

a.      Dr. Balkman stated that Plaintiff had full range of motion in his upper and lower extremities.  This statement is contradicted by measurements recorded on the range of motion chart appended to her report, which recorded significantly reduced range of motion in the hips, lumbar spine, right shoulder and elbows . (Compare Tr. 111-112 with Tr. 114-115).

b.      Dr. Balkman stated that straight leg raise exam was normal.   The range of motion chart indicates that normal straight leg raise is 90° , and Plaintiff's was measured as 75° on the right and 70° on the left.  (Compare Tr. 112 with Tr. 115).

c.      Dr. Balkman stated that motor strength was graded at 5/5 and normal in all major muscle groups.  On the range of motion chart she indicated that upper extremity strength was only "fair," measured as 2/5 on the left and 3/5 on the right.  (Compare Tr. 112 with Tr. 114).  Similarly,  lower extremity strength was graded as only "fair," measured as 3/5 for both  right and left.    (Tr. 115).

The ALJ made no ttempt to clarify the inconsistencies in Dr. Balkman's report, and in fact,

_____

[7]Dr. Baggs evaluated Plaintiff on only one occasion since August 30, 1994.  In his letter dated May 29, 1993 reporting the examination of the prior day, he states that Plaintiff suffers from functional limitations, and that he has objective radiologic and clinical findings consistent with arthritis. Dr. Baggs' stated that Plaintiff's bilateral elbows lacked full extension.  This is consistent with observations made by Dr. Darrow regarding the right elbow in 1998 (See Tr. 142), and with the range of motion chart prepared by Dr. Balkman (See Tr. 114).  Dr. Baggs stated that Plaintiff had marked spurring.  X-ray reports note spur formation at L4-5 and L5-S1 (Tr. 183, 108-109, 132), and slight spur formation of the right patella (Tr. 108-109).  Dr. Baggs stated that Plaintiff had swelling and tenderness, although he did not specify of what joints.  Dr. Balkman noted fullness but no tenderness at the DIP joints of the 2nd and 3rd fingers.

there is no indication that he was aware that they existed.  Dr. Balkman may not have been aware that

the inconsistencies existed, as her narrative report states that it had been "dictated but not read."  (Tr.

113).

An ALJ must consider several factors in determining what weight to give any medical opinion.

20 C.F.R. § 404.1527(d)(2)-(6), §416.927(d)(2)-(6).  Glaring internal inconsistencies in a medical

opinion must be considered, and if the opinion is relied upon by the ALJ, must be discussed.  *Cf.,*

*Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (The ALJ is not entitled to pick and

choose from a medical opinion, using only those parts that are favorable to a finding of nondisability)*;*

*Cf, Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) (While ALJ need not discuss every

item of evidence he may not rely solely on portions of the record that support his decision and ignore

evidence favorable to a claimant)

Due to its inconsistencies, I find that Dr. Balkman's report does not provide substantial

evidence that would support the ALJ's finding of RFC.

**B.     The ALJ Erred in Assessing Plaintiff's Credibility.**

Although credibility is peculiarly the province of the ALJ, *Kepler v. Chater*, 68 F.3d 387, 391

(10th Cir.1995), his "findings as to credibility should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings."  *Id*. (quotation omitted).  The ALJ's

discussion of claimant's credibility was this:

> I find that  the claimant's testimony and allegations indicated in the record (are) not
> credible.  His statements are not consistent with the objective evidence and are not
> fully supported.  The claimant has described daily activities which are not limited to
> the extent one would expect, given the complaints of disabling symptoms and
> limitations.
>
> On occasions (sic) in this decision, I have determined that the claimant is not a

credible witness and that his recitations of his condition are not accurate.  I have, therefore, discounted his testimony and the testimony of medical experts based, in whole or in part, upon the symptoms and history testified (sic) by the claimant.  In determining the credit and weight to be given to the testimony of the claimant at the hearing, I have taken into account the claimant's memory, the claimant's manner while testifying, the consistency of the claimants testimony with his statements on other occasions and the claimant's interest, bias or prejudice considered in light of all the evidence in this case.

(Tr. 19-20).

The ALJ must "articulate specific reasons for questioning a claimant's credibility" where subjective pain testimony is critical.  *Kepler v. Chater*, 68 F.3d at 391 (internal quotations omitted).  Failure to make credibility findings regarding critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability."  *Id*. (internal quotations omitted).  The ALJ's opinion, as written, requires that the Court examine every statement cited by the ALJ, and guess which ones the ALJ found indicative of credibility or lack of credibility.  At no point in his opinion does the ALJ provide enlightenment as to what in Plaintiff's memory, manner of testifying, interest, bias or prejudice indicated poor credibility.   To the extent he found Plaintiff's statements inconsistent with objective evidence and not fully supported,  the ALJ appears to refer primarily to the evaluation conducted by Dr. Balkman.  The ALJ could reasonably rely on Dr. Balkman's observations regarding Plaintiff's ability to walk as bearing on his credibility; however, as previously indicated, he did not address other inconsistencies in Dr. Balkman's examination which bear on credibility.  The ALJ referred to Plaintiff's daily activities as evidence of his lack of credibility.[8]   "The ALJ may not rely

---

[8]"The claimant indicated . . . that he was able to fix breakfast and feed the dogs.  The claimant indicated that on some days his knees and back hurt so much that he had trouble getting in and out of his truck.  He also indicated that he drives when he felt like it . . . that he sometimes goes shopping and sometimes helps with household chores. . . .that he was a fire chief for the volunteer fire department . . . all

on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993). (citations omitted).

Accordingly, I find that the ALJ failed to apply correct legal principles in assessing Plaintiff's credibility, and that his assessment is not supported by substantial evidence.

I do not reach any of the other issues raised on appeal.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse  Administrative Agency Decision (Docket No.9) is granted, and this matter is hereby remanded to the Commissioner of Social Security for additional proceedings.  The Commissioner shall

1.      Reassess Plaintiff's residual functional capacity;

2.      Reassess Plaintiff's credibility, referring specifically to evidence that supports the credibility determination;

The results of the reassessment of residual functional capacity and credibility  may or may not rule out use of the Medical Vocational Guidelines and may or may not indicate the need for vocational testimony or evidence.

In ordering this remand, I do not direct any particular result.  Remand will simply assure that correct legal standards are involved in reaching a decision, based on the facts of this case. *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir. 1988).

---

he does now was the paperwork and sits at the fire station and listens to calls. . . he had no problems combing or washing his hair, or putting away groceries or using utensils . . . he could button his clothes, tie his shoes and sip his pants, jackets, etc. . . . the claimant testified that when he gets up he fixes breakfast and that if he felt like it he would do a load of laundry . . . he drives a little. . . for the last two years all he did (as a volunteer firefighter) was paperwork . . .he goes to the movies occasionally and takes his boys out to shoot. . .  (Tr. 18)

**IT IS SO ORDERED.**

**Richard L. Puglisi**
**United States Magistrate Judge**
**(sitting by designation)**